

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CINCINNATI INSURANCE COMPANY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | No. 09 C 2250 |
| CONTEMPORARY DISTRIBUTION, INC., an ) | |
| Illinois Corporation; DENNIS BURNS and ) | The Honorable William J. Hibbler |
| CHUCK BURNS, Individually; and MIDWEST ) | |
| MOTORCYCLE SET-UP, INC., an Illinois ) | |
| Corporation; ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

This case arises out of an underlying lawsuit filed in state court in December 2006, *Contemporary Management v. Biotek, Inc.*, No. 06 M1 729963 (Ill. Cir. Ct. of Cook County). Contemporary Management filed the original complaint in the underlying lawsuit against its tenant, Biotek. In response, Biotek filed a counterclaim against Contemporary Management and a third party complaint against Defendants. Defendants sought coverage, including the provision of a defense to the lawsuit, from Plaintiff Cincinnati Insurance Company. Cincinnati refused and filed this diversity action, seeking a declaratory judgment stating that (a) the underlying lawsuit is not covered by the terms of the policy; and (b) Defendants did not timely notify Cincinnati of the suit. Cincinnati now moves the Court for judgment on the pleadings on the first issue, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. The Court DENIES that motion.

### *BACKGROUND*

The underlying third-party complaint in this case contains claims of constructive eviction, breach of verbal contract, breach of implied contract, breach of implied warranty of habitability,

1

intentional infliction of emotional distress, and negligent infliction of emotional distress. (Compl., Ex. C (hereinafter "3d Party Compl.").) All of these counts are based on the same set of factual allegations. (3d Party Compl. at ¶¶ 8, 13, 20, 28, 37, 44, 51, & 60.) Biotek alleges that they leased property from Defendants and Contemporary Management beginning in 1985. (3d Party Compl. at ¶¶ 4-5.) Then, Biotek alleges that, in 2006, Defendants engaged in a series of wrongful actions, including: (1) shutting off utilities such as heat in the leased space for two weeks despite warnings by the municipality; (2) making access to common area bathrooms impossible by blocking entryways; (3) blocking ingress to and egress from the leased property through the use of a forklift truck; (4) forcefully entering onto the leased property and yelling obscenities at Biotek's principal and employees; (5) knocking down a wall separating the leased property from the other portions of the property; and (6) refusing to provide a key to the parking area. (3d Party Compl. at ¶ 20.) Biotek states that these actions were "knowing, intentional, and willful and done with a reckless disregard of the probability of causing" damage. (3d Party Compl. at ¶ 29.) It also uses phrases such as "malicious and oppressive" and "willful and conscious" to describe Defendants' behavior. (3d Party Compl. at ¶ 32.)

Cincinnati issued an insurance policy to Contemporary Distribution and Midwest Motorcycle that was effective during the relevant dates. (Compl., Exs. D & E (hereinafter "Policy")). The policy contained coverage for three relevant categories of damage: "property damage," "bodily injury;" and "personal and advertising injury." (Policy at CIC 0021, CIC 00226, & CIC 0058.) "Personal and advertising injury" is defined to include "the wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises." (Policy at CIC 0038.) The policy provides coverage for property damage and bodily injury only if they were caused by an "occurrence," defined as an "accident, including

continuous or repeated exposure to substantially the same general harmful conditions." (Policy at CIC 0021, CIC 0038, CIC 0058, & CIC 0073.) The policy excludes coverage for "personal and advertising injury" in a number of instances, two of which are relevant here. First, the policy excludes coverage when the insured acted "with the knowledge that the act would violate the rights of another and would inflict personal and advertising injury." (Policy at CIC 0027, 0059.) Second, the policy does not cover personal and advertising injury "arising out of a breach of contract, except an implied contract to use another's advertising idea in [the insured's] 'advertisement.'" (Policy at CIC 0028, 0059.)

## *DISCUSSION*

### I. Standard of review

#### A. Judgment on the pleadings

A Rule 12(c) motion for judgment on the pleadings is "designed to provide a means of disposing of cases when the material facts are not in dispute and a judgment on the merits can be achieved by focusing on the content of the pleadings and any facts of which the court will take judicial notice." *All Amer. Ins. Co. v. Broeren Russo Const., Inc.*, 112 F. Supp. 2d 723, 728 (C.D. Ill. 2000) (internal quotations omitted). For the purposes of this motion, the pleadings consist of the complaint, answer, and any written documents attached as exhibits.[1] *Housing Auth. Risk Retention Group, Inc. v. Chicago Housing Auth.*, 378 F.3d 596, 600 (7th Cir. 2004) (citing Fed. R. Civ. P. 12(c)). "Where the plaintiff moves for judgment on the pleadings, 'the motion should not be granted unless it appears beyond doubt that the non-moving party cannot prove facts sufficient to support his position.'" *Id.* (quoting *All Amer. Inc. Co.*, 112 F. Supp. 2d at

---

[1] While Defendants have filed a counterclaim in this case, and Plaintiff has answered the counterclaim, neither filing contains any substance relevant to the substance of this motion.

3

728). In this case, the relevant pleadings include the Complaint, the Answer, the underlying third party complaint, and the portions of the insurance policy attached to the Complaint.

### B. Duty to defend actions

In a duty to defend action such as this one, Illinois law requires that the court "look to the allegations in the underlying complaint and compare these allegations to the relevant coverage provisions of the insurance policy." *Del Monte Fresh Produce N.A., Inc. v. Transportation Ins. Co.*, 500 F.3d 640, 643 (7th Cir. 2007) (internal quotation omitted). "Therefore, if the facts alleged in the underlying complaint fall within, or potentially within, the policy's coverage provisions, then the insurer has a duty to defend the insured in the underlying action." *Id.* (internal quotation and brackets omitted). "In addition, if several theories of recovery are alleged in the underlying complaint against the insured, the insurer's duty to defend arises even if only one of several theories is within the potential coverage of the policy." *Gen. Agents Ins. Co. of Amer., Inc. v. Midwest Sporting Goods Co.*, 215 Ill. 2d 146, 155, 828 N.E.2d 1092, 1098 (2005). Finally, in analyzing a duty to defend action, the court must liberally construe the allegations in the underlying complaint in favor of the insured. *Id.*

## II. Personal and advertising injury

Cincinnati concedes that because the underlying third party complaint makes allegations of wrongful eviction, the allegations fall within the definition of "personal and advertising injury" under the policy. However, Cincinnati argues that Defendants are not covered under that part of the policy because the suit falls within at least one of two exclusions. First, Cincinnati contends that the underlying third party complaint alleges that Defendants acted "with the knowledge that the act would violate the rights of another and would inflict personal and advertising injury." (*See* Policy at CIC 0027, 0059.) Second, Cincinnati argues that the personal

4

and advertising injuries alleged in the underlying third party complaint "aris[e] out of a breach of contract." (*See* Policy at CIC 0028, 0059.) The Court is not persuaded that either exclusion applies, and for this reason must deny Cincinnati's motion.

### A. Knowing violation

Cincinnati is correct that many of the allegations in the underlying third party complaint describe intentional and abusive behavior that the Defendants could not have committed without knowing that they were violating Biotek's rights. The company is also correct that the mere presence of words such as "negligent" and "reckless" in the complaint does not necessarily defeat their request for declaratory judgment because the complaint's factual allegations, rather than legal theories or labels, are determinative in a duty to defend case. *Lyerla v. AMCO Ins. Co.*, 536 F.3d 684, 691 n.3 (7th Cir. 2008) (internal quotations omitted); *West Amer. Ins. Co. v. Mund*, 500 F. Supp. 2d 1071, 1077 (S.D. Ill. 2007). For the same reason, though, labels such as "malicious" are not determinative either. Moreover, as Defendants concede, the "knowing violation" exclusion does not exclude coverage for all intentional conduct. This is obvious because the policy covers a number of intentional torts, including wrongful entry and eviction. Instead, coverage is excluded only if Defendants' knew that their actions would violate Biotek's rights and inflict personal or advertising injury.

Looking to the underlying factual allegations, the Court finds that there are actually some allegations of conduct which may have been committed without such knowledge and that, if proven, could support a claim for wrongful eviction. For instance, Biotek alleges that Defendants made "access to the bathrooms impossible by blocking off the entryways to such rooms" and "block[ed] ingress and egress to the leased property...through the use of a forklift truck." (3d Party Compl. at ¶ 28.) Biotek may be able to prove that Defendants committed these

5

actions with the sufficient level of intentionality to support its claims that it was wrongfully evicted without proving that Defendants knew that they were violating Biotek's rights. *See Home Rentals Corp. v. Curtis*, 236 Ill. App. 3d 994, 998, 602 N.E.2d 859, 862 (Ill. App. Ct. 1992) (holding that "constructive eviction does not require a finding that the landlord had the express intention to compel a tenant to leave the demised premises or to deprive him of their beneficial enjoyment"). Despite Cincinnati's protests, to find otherwise would in fact render the coverage for wrongful evictions illusory.

### B. Breach of contract

Cincinnati also argues that because Biotek's claims of wrongful eviction are premised on the existence of a lease, the suit falls within the policy's exclusion for claims "arising out of a breach of contract." However, the vast majority of wrongful eviction actions are based on an underlying lease. Thus, Cincinnati's attempt to apply the exclusion seems to render the coverage for wrongful eviction injuries virtually meaningless. Cincinnati cites to a Ninth Circuit case finding otherwise in support of its argument. In that case, *Stanford Ranch v. Maryland Casualty Co.*, 89 F.3d 618, 620 (9th Cir. 1996), the insured sought coverage for actions for specific performance, breach of contract, intentional misrepresentation, negligent misrepresentation and nondisclosure. The underlying claims did not include any for wrongful eviction. *Id.* However, in an attempt to prove that the policy contained an inherent ambiguity, the insured argued that the policy's coverage for wrongful eviction conflicted with the exclusion for claims based on a breach of contract. *Id.* at 628. The Court disagreed, pointing out that "[a]lthough wrongful eviction can refer to eviction of a tenant or purchaser and be based in contract, it can also refer to an action that is not based in contract as, for example, the eviction of a trespasser." *Id.*

The Court is not persuaded by the logic in *Stanford*, and agrees instead with a later, unpublished opinion by the Ninth Circuit, *Brown v. Travelers/Aetna Property Casualty Corp.*, 187 F.3d 646, 1999 WL 455008 (9th Cir. 1999). In that case, the court noted that "[w]hile it is technically possible for wrongful eviction claims to arise independent of any lease agreement between tenant and landlord...[t]he plain meaning of the word "eviction" invokes a situation in which the parties' relationship is that of landlord and tenant and is governed by a contract, namely, the lease." *Id.* at *1. The court also noted that the provision establishing coverage for wrongful evictions in *Brown* contained some language, not present in *Stanford*, "specifically invoking coverage for lease-based eviction claims." *Id.* at *2 (covering eviction from property "*that a person occupies* by or on behalf of its owner, *landlord or lessor*"). The policy in question in the instant case contains almost identical language, providing coverage for:

> "wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises *that a person occupies, committed by or on behalf of its owner, landlord or lessor.*"

(Policy at CIC 0038 (emphasis added).) This language may not "*clearly* contemplate[ ] coverage for the wrongful eviction of a tenant by a landlord," as stated in *Brown*. 187 F.3d 646, 1999 WL 455008 at *2 (emphasis added). Nonetheless, in light of the fact that the Court must construe policy provisions liberally in Defendants' favor, the Court find that the facts alleged in the underlying third party complaint potentially fall within the policy's coverage for personal and advertising injury. *Id.* For this reason, the Court need not address whether the policy's other provisions apply.

7

## *CONCLUSION*

For the above reasons, the Court DENIES Defendants' motion for judgment on the pleadings.

IT IS SO ORDERED.

1/26/10
Dated

Hon. William J. Hibbler
United States District Court